# EXHIBIT A

EFILED IN OFFICE
CLERK OF STATE COURT
RICHMOND COUNTY, GEORGIA
**2020RCSC00810**
PATRICIA W. BOOKER
JUL 31, 2020 09:20 AM

Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

IN THE STATE COURT OF RICHMOND COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| LAUREN DANIEL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| ENCOMPASS HEALTH WALTON | ) | |
| REHABILITATION HOSPITAL, LLC, | ) | _____ |
| A DELAWARE CORPORATION, and | ) | |
| JANE AND JOHN DOES, individually, | ) | |
| Employees of defendant, | ) | |
| | ) | |
| DEFENDANT. | ) | JURY TRIAL DEMAND |
| | ) | |

## COMPLAINT

COMES NOW, the plaintiff, by and through the undersigned counsel, and hereby submits this complaint and in support thereof shows the Court the following:

1. The plaintiff is a resident of Richmond County, State of Georgia, and is subject to the jurisdiction and venue of this Court

2. The defendant is a corporation existing under and by virtue of the laws of the State of Delaware with its principal office located at 1355 Independence Dr., Augusta, GA 30901 and is subject to the jurisdiction and venue of this Court.

3. The defendant may be served with process through its registered agent CT Corporation Systems, 289 S Culver St., City of Lawrenceville, County of Gwinnett, GA 30046-4805.

4. That since prior to the year 2015, and at all times relevant to this action, plaintiff was employed by defendant on a full time basis.

5. On or about November 8, 2017, plaintiff underwent a surgical procedure that removed a significant amount of her stomach.

6. The complications from this surgery caused her to have many subsequent surgeries.

7. The plaintiff was/is being treated by a Dr. Jacome at Live Healthy MD in Martinez, GA for he gastro-surgical issues.

8. Each surgery required time away from work for the procedure and for convalescence.

9. The plaintiff properly elected her rights pursuant to 29 U.S.C. § 2601 commonly known as the Family Medical Leave Act or "FMLA" for short.

10. The defendant is an employer with more than 50 employees and is subject to the provisions of 29 U.S.C. § 2601 commonly known as the Family Medical Leave Act or "FMLA" for short.

11. On or about February of, 2019, while away from work pursuant to FMLA, plaintiff requested that her doctor grant her permission to return to work.

12. Her doctor informed her she could return to work on March 5, 2019 and work two 10 hour shifts per week. He also said she could not lift more than 10 pounds and would need to return to the office in 3 weeks for further evaluation.

13. Plaintiff wrote this information on a Live Healthy MD return to work form to which Dr. Jacome had staff apply his signature stamp. He was impressed by Ms. Daniel's motivation to return to work early and simply wanted to make sure she did not overdo things.

14. Defendant received the return to work slip, which was accepted by an agent of defendant named either Barbara or Caroline.

15. This person observed that the return to work slip was written in Ms. Daniel's handwriting.

16. Based on information and belief, the same agent of defendant called Dr. Jacome's office to ask if the slip was filled out by the practice, as it appeared the employee/patient had written it. Dr. Jacome's clinical assistant called him to ask him about this and he said yes, Ms. Daniel had been the one to write on the form, he was fine with her returning to work early and she could do whatever she wants while at work.

17. Dr. Jacome's clinical assistant misunderstood his communication and thought he said Ms. Daniel prepared her own return to work slip (without his involvement) and was just going to do whatever she felt like doing with regard to her return to work.

18. Due to the confusion, Dr. Jacome's clinical assistant called Defendant and reported that Dr. Jacome had not written the return to work slip. Defendant asked for a letter from the practice informing them of this, which Dr. Jacome's clinical assistant subsequently provided and added that she could return to work without any limitation. She stamped Dr. Jacome's signature based on her understanding of what her said, which was in fact a misunderstanding, and sent this to Defendant.

19. When Dr. Jacome recognized this misunderstanding had occurred, he personally called Defendant to explain what had happened. He had at least two conversations and neither individual he spoke to accepted the information he attempted to convey to clarify the situation. He reiterated to them that Ms. Daniel desired to return to work earlier than recommended and since he was quite busy

at the time he asked Ms. Daniel to complete the return to work slip with his instructions.

20. Dr. Jacome stated when his office was called to inquire who had written the return to work slip he confirmed it had been completed by the employee/patient and not him personally, but did not add that it had been completed with his instructions and approval. He attempted to explain the misunderstanding that when he told his clinical assistant Ms. Daniel could do whatever she wants, he meant this with regard to her physical limitations at work and not that she was trying to lay out of work and do whatever she wants with regard to returning to work. Dr. Jacome is from Ecuador and English is his second language. It is not uncommon for him to have communication gaps with staff from time to time due to this.
21. Dr. Jacome repeatedly called defendant but defendant refused to accept his calls or return his calls.
22. Despite Dr. Jacome repeatedly informing that return to work slip that plaintiff provided to defendant was absolutely valid and that the only reason for the miscommunication was Dr. Jacome's staff and not the plaintiff, defendant terminated the plaintiff's claiming that she had forged her return to work slip.
23. Defendant terminated plaintiff, despite knowing, directly from Dr. Jacome, that plaintiff did not forge her return to work slip.
24. As the defendant was fully aware that the plaintiff's return to work slip was not forged, as it had been told numerous times from the plaintiff's treating physician, the is clear that the defendant fired plaintiff out of retaliation.
25. Defendant's violation of FMLA was clearly willful in light of facts.

26. Defendant's termination of plaintiff's employment violated her rights under FMLA.

27. Defendant's termination of plaintiff's employment in violation of FMLA caused the plaintiff significant damages.

28. Plaintiff has suffered damages in the form of loss of back pay, front pay, benefits, attorney's fees, court fees, litigation expenses, and liquidated damages.

WHEREFORE PLAINTIFF PRAYS:

1. That service and process issue upon defendant;

2. That this honorable court empanel a jury of 12 persons to decide all issues of fact;

3. That his honorable court find for and award plaintiff damages in an amount to be determined by said jury;

4. That this honorable court award plaintiff any and all further relief that it deems just and proper.

Respectfully submitted this 31st day of July, 2020

/s/ Joseph T. Rhodes
Joseph Rhodes
Counsel for Plaintif
Ga Bar No.: 309847

HUNTER RHODES LLC
266 Greene Street
Augusta, GA 30901
706-724-3156
jrhodes@hunterrhodes.com